## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| MOUNTAIN MEADOWS PET PRODUCTS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> NT CONSULTING, LLC, NATHAN THOMAS, and SETH KAUFMAN, <br><br> Defendants. | **No. CV-24-22-GF-BMM** <br><br><br> **ORDER** |

## INTRODUCTION

Plaintiff Mountain Meadows Pet Products, Inc. ("MMPP"), filed suit against Defendants Seth Kaufman ("Kaufman"), Nate Thomas ("Thomas"), and NT Consulting ("NT") (collectively "Defendants") for alleged interference with contract and improper use of trade secrets. (Doc. 1.) MMPP asks the Court for the following relief: 1) find that a valid oral contract existed between the parties for sales commissions, not royalty or licensing; 2) enjoin defendants from alleged misappropriation of trade secrets under Montana law; and 3) grant monetary relief for tortious interference with business relations. (*Id*. at 11-12.)

MMPP entered into an oral agreement with NT through Thomas and Kaufman in 2014. (*Id*. at 4; Doc. 8.) Gary Turco ("Turco"), who owns MMPP,

1

alleges that MMPP paid NT Consulting $3.9 million from March 2018 to February 2024. (Doc. 9-1.) MMPP tendered payment to NT, which NT accepted at its place of incorporation in Arkansas. (Doc. 5-2 at 4.)

Turco, Kaufman, and Thomas agree that discussions about an agreement to start a pet food business started while Thomas, Kaufman, and Turco resided in Arkansas, Illinois, and Utah, respectively. (Doc. 5 at 7.) MMPP and Turco, never directly refute the fact that Turco lives in Utah. The only reference is that Turco travels frequently to Montana to oversee operations of MMPP. (Doc. 9; Doc. 9-1.) Kaufman and Thomas developed pet food formulas in Arkansas and Illinois. (*Id*. at 8.) Kaufman and Thomas sent pet food formulas for testing in Pennsylvania. (*Id*. at 9.) Kaufman and Thomas also tested formulas and sent them to Turco in Utah. (*Id*.) NT claims that Turco unilaterally decided to manufacture pet food at MMPP in Montana, using the pet food formulas that all three parties had developed out of state. (Doc. 5-2.)

Kaufman resides in Illinois. (Doc. 5-1.) Thomas resides in Arkansas. (Doc. 5-2.) Turco resides in Utah. (Doc. 9-1.) MMPP is located in Lewistown, Montana. (Doc. 1.) Defendants' moved to dismiss Mountain Meadows's Complaint for lack of personal jurisdiction and improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3). (Doc. 4.) Defendants moved, in the alternative, to transfer venue pursuant

28 U.S.C. §§ 1404 and 1406. (*Id.*) The Court held a motion hearing on August 28, 2024. (Doc. 20.)

## LEGAL STANDARD

A court must possess personal jurisdiction over all parties in a case. Fed. R. Civ. Pro. 12(b)(2). The plaintiff bears the burden of showing that personal jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004). When a defendant makes a motion to dismiss for lack of personal jurisdiction and the motion is based on written materials rather than the evidence presented, "the plaintiff need only make prima facie showing of jurisdiction facts." *Id*. (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).

The plaintiff may use the pleadings and declarations to support facts warranting jurisdiction, but the plaintiff cannot use the allegations in the complaint alone to meet the jurisdictional burden. *Id*. The Court accepts as true for purposes of a challenge to personal jurisdiction any uncontroverted allegations of the plaintiff.  *Isakson v. Roberts Markel Weinberg Butler Hailey PC*, No. CV 23-139-M-DWM, at 4 (D. Mont. Apr. 9, 2024). Controverted allegations are resolved in favor of the plaintiff. *LNS Enters. Ltd. Liab. Co. v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022).

3

Federal courts generally follow state law in determining personal jurisdiction over persons. *Walden v. Fiore,* 571 U.S. 277, 283 (2014). Montana has authorized its courts to exercise personal jurisdiction over persons so long as it does not conflict with the U.S. Constitution and the notions of due process. *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990).

General personal jurisdiction is satisfied if there exists a connection between the defendant and the forum state. The defendant must engage in "continuous and systematic general business contacts," that equate to physical presence in the forum state. *Schwarzenegger*, at 801. General personal jurisdiction proves difficult to establish over nonresident defendants if they conduct most of their business out of state. Conversely, specific personal jurisdiction only requires that the nonresident defendant have "minimum contacts" with the forum. The specific jurisdictional inquiry focuses on both the suit-related conduct and any conduct arising under Montana's long arm statute. *Id*. at 802.

Montana law provides that personal jurisdiction exists over a party only if 1) Montana's long-arm statute confers personal jurisdiction and 2) the exercise of personal jurisdiction conforms with "the traditional notions of fair play and substantial justice embodied in the due process clause" of the Fourteenth Amendment to the U.S. Constitution. *Milky Whey, Inc. v. Dairy Partners*, LLC,

342 P.3d 13, 17 (2015) (quoting *Cimmaron Corp. v. Smith*, 67 P.3d 258 (2003.)

(explaining Montana's two-part test)).

> Montana's long-arm statute provides as follows:
>
> All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
>
> (A) the transaction of any business within Montana;
>
> (B) the commission of any act resulting in accrual within Montana of a tort action; [or]
>
> (C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;
>
> (D) contracting to insure any person, property or risk located within this state at the time of contracting;
>
> (E) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or
>
> (F) acting as a director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state."

Mont. R. Civ. P. 4(b)(1)(A-F).

Venue is proper in 1) a judicial district in which any defendant

resides, if all defendants are residents of the State in which the district is

located; 2) a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or 3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C.S. § 1391(b)(1-3).

## ANALYSIS

**I.    This Court lacks personal jurisdiction over NT Consulting, Thomas, and Kaufman because they have no connection to Montana, and do not conduct business in Montana.**

NT Consulting, Kaufman, and Thomas argue that the Court lacks general and specific personal jurisdiction over all three parties. (Doc. 5 at 13-16.) The district court applies the law of the state in which the district court sits where no applicable federal statute governs personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)).

### A. General Personal Jurisdiction

The Court must first determine whether MMPP has made a showing of facts that indicate Defendants' conduct is so "continuous and systematic" that Defendants are physically present in Montana. General personal jurisdiction depends upon the defendant's relationship to the forum state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 443 P.3d 407, 412 (2019). The focus of the

6

inquiry into general personal jurisdiction should be into the entirety of a defendant's activities, not isolated events or potential business relations in the state. *BNSF Ry. v. Tyrrell*, 581 U.S. 402, 414, 137 S. Ct. 1549, 1559 (2017).

In *Milky Whey*, a Montana dairy company contracted with an out of state dairy supply company, Dairy Partners, who would ship products to Salt Lake City, UT for pick up by Milky Whey. Dairy Partners was not a Montana corporation, never physically entered Montana, and did not purchase or sell product in Montana. *Milky Whey, Inc. v. Dairy Partners*, *Ltd. Liab. Co.*, 342 P.3d 13, 17 (2015). The only contact Dairy Partners had with Montana and Milky Whey was receiving payments and communicating by telephone and electronic mail. *Id*. Dairy Partner was found not to be physically present in Montana, and, thus, the court lacked general personal jurisdiction. *Id*.

The parties have a similar relationship to the parties in *Milky Whey*. The parties further agree that this Court lacks general personal jurisdiction. (Doc. 9; Doc. 13.) NT's principal place of business and place of incorporation are in Arkansas. (Doc. 5-2.) Thomas and Kaufman are also located out of state in Arkansas and Illinois respectively. (Doc. 5-2; Doc. 5-1.) Gary Turco lives out of state in Utah and MMPP sends money out of state to Defendants. (Doc. 9-1.) Defendants are not subject to the Courts general personal jurisdiction because Plaintiff have presented no clear evidence that NT conducts any activity in

7

Montana or that NT maintains "continuous and systematic" contacts with Montana. MMPP has pointed to one isolated event where Thomas and Kaufman visited Montana to inspect the manufacturing facility. (Doc. 9-2 at 4.) There are no instances where Defendants shipped goods to Montana, sold products in Montana, or solicited business in Montana. The only interactions seem to be remotely conducted between Defendants and MMPP, and as in *Milky Whey*, the Court lacks general personal jurisdiction based on these attenuated transactions. The Court will then focus its analysis on specific personal jurisdiction.

### B. Specific Personal Jurisdiction

Specific personal jurisdiction arises when the lawsuit itself "arises from the specific circumstances set forth in Montana's long-arm statute . . . and  [when] the defendant's suit-related conduct create[s] a substantial connection with Montana." *Ford Motor Co*. at 484 (internal citations omitted.) Specific personal jurisdiction requires a more careful inquiry into the nature of a defendant's acts and the effects that those acts have on the forum state. Montana's long arm statute, as described above, allows Montana courts to establish jurisdiction over persons in Montana if they make transactions in the state, have performed acts that accrued as torts in Montana, or have any property interests in the state. Mont. R. Civ. P. 4(b)(1).

Montana has developed a two-step test "to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant." *Tackett v.*

*Duncan*, 334 P.3d 920 (2014). We first determine whether personal jurisdiction exists under Mont. R. Civ. P. 4(b)(1). Specific personal jurisdiction may exist under Rule 4(b)(1) if the claim for relief arises from any of the acts listed in Rule 4(b)(1)(A-G) and create specific jurisdiction for the purpose of litigating that particular claim. *Milky Whey*, 342 P.3d at 17.

If specific personal jurisdiction exists under the first step of the test, the court then determines whether the exercise of personal jurisdiction conforms with "the traditional notions of fair play and substantial justice embodied in the due process clause." *Cimmaron Corp. v. Smith*, 67 P.3d 258 (2019) (citing *Threlkeld v. Colorado*, 16 P.3d 359). "[I]f personal jurisdiction does not exist under the first part of the test, further analysis under the second part of the test is unnecessary." *Id.* at 260.

MMPP relies on *Grizzly Sec. Armored Express* to show that Defendants' activities constitute "transaction and business" within the state. (Doc. 9 at 8, 10.) In *Grizzly*, a nonresident business had numerous business contacts in the state and formed contracts with other businesses in Montana apart from Grizzly Security. *Grizzly Sec. Armored Express, Inc. v. Armored Grp., LLC*, 255 P.3d 143, 149 (2011). The court exercised personal jurisdiction because of the nonresident defendant's numerous business contacts within Montana. *Id*. MMPP, on the other hand, only contracts with NT, Thomas, and Kaufman to conduct business in

9

Montana. Unlike the defendant in *Grizzly Security*, Defendants have no other business contacts in Montana, and they do not form contracts with other Montana entities. (Doc. 5-1; Doc. 5-2.)

MMPP also misplaces reliance on *Spectrum Pool Products*. Spectrum "provided repair service to the Swimlift in Montana," after MW Golden had shipped the Swimlift back to Montana. *Spectrum Pool Prods., Inc. v. MW Golden, Inc.*, 968 P.2d 728, 730 (Mont. 1998). MW Golden failed to pay for repairs conducted on the Swimlift in Montana, and the court found that by failing to pay debts owed in Montana, MW Golden "purposefully availed itself of the opportunity to conduct business within [Montana]." *Id.*

Defendants claim that they have never shipped any products to Montana. Defendants also allege that they conduct no business in Montana. (Doc. 5 at 2; Doc. 5-1; Doc. 5-2.) Unlike *Spectrum Pool Products*, where services and sales were conducted within Montana, Defendants did not send any trademarked information to Montana, and they did not solicit sales in Montana. MMPP asserts that by paying Defendants, Defendants are transacting business with MMPP in Montana. (Doc. 9 at 2.) As Defendants correctly point out, however "a non-resident does not subject himself to the jurisdiction of Montana by merely entering into a contract with a resident of Montana." (Doc. 13 at 7 (quoting *Cimmaron Corp. v. Smith*, 67 P.3d at 260-61.)) The focus of a contractual inquiry is where

10

Defendants would perform under the contract. *Id.* (concluding that personal jurisdiction is not acquired through interstate [transactions] made pursuant to a contract that is to be *performed in another state*). MMPP fails to allege any connection to performance of the contractual terms in Montana.

MMPP relies on *Nelson* to establish that MMPP has an extensive contractual relationship with Defendants that warrants the exercise of the Court's jurisdiction. (Doc. 9 at 9.) The Montana Supreme Court determined that the defendants had interjected themselves into Montana by being involved in three different contractual relationships with two different Montana residents. *Nelson v. San Joaquin Helicopters*, 742 P.2d 447, 450 (Mont. 1987). One relationship involved collecting a debt over a two-year period. *Id.* The debt collection efforts were deemed to be extensive and affected both Montana businesses and individual Montana residents. *Id.* MMPP alleges here that Defendants acted as sales consultants for the Montana company. MMPP fails to allege, however, where the business marketing efforts took place and the location of the advertising audience targeted by MMPP. (Doc. 9-1 at 2.) Unlike in *Nelson*, MMPP negotiated the contract with Defendants out of state. Defendants never sent physical products to MMPP. Defendants have never attempted to collect a debt owed by MMPP. *Id.*

MMPP also cites to *B.T. Metal Works* to support its longstanding business relationship with Defendants as a basis for assertion of personal jurisdiction. (Doc.

9 at 10.) The Montana Supreme Court concluded that specific personal jurisdiction existed in *B.T. Metal Works* because the defendants had shipped and sold products on numerous occasions to the plaintiffs within Montana. *B.T. Metal Works v. United Die & Mfg. Co.*, 100 P.3d 127, 132 (Mont. 2004). This case proves distinguishable. Defendants neither shipped products to Montana nor interjected themselves into other ongoing business relationships in Montana. If Defendants had shipped the "technical ingredients" to Montana or had exercised some control over how that product had been manufactured within Montana, MMPP may have been able to show that Defendants had at least minimum contacts to establish jurisdiction. The fact that nonresident Defendants and MMPP's contractual relationship has lasted for over eight years cannot alone establish jurisdiction. MMPP's failure to establish jurisdiction on the first prong relieves the Court of the need to analyze the second prong of whether the exercise of personal jurisdiction would violate the traditional notions of fair play and substantial justice to conform to due process.

## II.  This Court lacks personal jurisdiction over NT Consulting, Thomas, and Kaufman but transfer to the Western District of Arkansas Federal Court would be proper.

A motion to transfer venue under 28 U.S.C. §§ 1404(a) requires a court to weigh multiple factors when determining whether transfer is appropriate in a particular case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir.

2000).  For example, a court may consider: 1) the location where the relevant agreements were negotiated and executed; 2) the state that is most familiar with the governing law; 3) the plaintiff's choice of forum; 4) the respective parties' contacts with the forum; 5) the contacts relating to the plaintiff's cause of action in the chosen forum; 6) the differences in the costs of litigation in the two forums; 7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and 8) the ease of access to sources of proof. *Id.*

The parties negotiated the agreement from Arkansas, Illinois, and Utah. (Doc. 5-2. at 2-3.) The parties executed the agreement between Kaufman, Thomas, NT and Turco. NT, Thomas, and Kaufman are not located in Montana. None of these parties solicit or conduct business in Montana. No clear connection exists between the alleged acts and Montana. (Doc. 5-1.; Doc. 5-2.; Doc. 9-1.) MMPP argues that Thomas and Kaufman are performing transactions in Montana for purposes of jurisdiction by promoting the business and being paid. (Doc. 9.; Doc. 9-1.) MMPP fails to identify where any parties promote the business. MMPP admits that NT is paid outside Montana. (Doc. 9 at 4.)

Arkansas, Illinois, and Utah represent states more likely to be familiar with the law governing this dispute. Turco and Kaufman previously worked at American Nutrition in Ogden, Utah. (Doc. 5-2 at 2.) Kaufman and Thomas worked together at Simmons Foods in Siloam Springs, Arkansas. (*Id.*) The parties

13

developed formulas for pet food formulas at separate locations in Utah, Arkansas, and Illinois. (*Id.* at 3.) These states have corporations that develop these types of technical ingredients. These states likely would be familiar with the law surrounding these disputes.

The parties have presented no evidence of a forum selection clause chosen by MMPP or Turco. The oral agreement remains vague and all attempts at renegotiation have failed. (Doc. 5-2 at 5; Doc. 9-1 at 3-4.) Thomas lives in Arkansas. (Doc. 5-2.) Seth Kaufman lives in Illinois. (Doc. 5-1.) NT Consulting is incorporated in Arkansas and its principal place of business is located there. (Doc. 5-2 at 4.) Gary Turco lives in Utah but frequently travels to Montana. (Doc. 9-1 at 2.) Thomas asserts that formulas are developed in Arkansas, then sent to Pennsylvania for testing. (Doc. 5-2 at 5.) The formulas are then sent to Turco in Utah and used at the manufacturing facility in Montana. (*Id.*) The parties' contacts with Montana prove slim and weigh in favor of transferring the case elsewhere.

It remains unclear where the contacts that relate to MMPP's allegations of interference with customers occurred. The cost of litigation likely would be higher in the other proposed venues than in Montana. Many of the other factors weigh in favor of transferring the case to Arkansas. The Court finds that the case should be resolved in the United States District Court for the Western District of Arkansas.

14

## CONCLUSION

MMMP's Complaint should be dismissed because it lacks sufficient factual allegations linking NT, Kaufman, and Thomas to Montana. The Complaint also proves vague on where the alleged tortious interference took place and whether it was directed at Montana customers. MMPP fails to satisfy this heightened pleading standard in its failure to allege with any particularity the circumstances linking the alleged trade secret infringement and NT's, Kaufman's, or Thomas's conduct. This Court therefore declines to exercise personal jurisdiction over Defendants.

## ORDER

Accordingly, **IT IS ORDERED:**

1.)  Defendant's Motion to Dismiss (Doc. 4) is **GRANTED**.

2.) Defendants Motion to Transfer the case to the Western District of Arkansas is **GRANTED**.

DATED this 25th day of September, 2024.

_____
Brian Morris, Chief District Judge
United States District Court